818 P.2d 343

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jodi SHOLES, Defendant–Appellant.**

No. 18431.

Court of Appeals of Idaho.

Oct. 3, 1991.

McDermott, Zollinger, Box & Olley, Pocatello, for defendant-appellant. R. Ted Israel argued.

Larry J. EchoHawk, Atty. Gen. and Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Jodi Sholes entered a conditional plea of guilty to manufacturing a controlled substance, marijuana. I.C. §§ 37–2732(a)(1)(B). The sole question on appeal is whether the district court properly denied the motion to suppress the evidence forming the basis for the conviction. We affirm.

## FACTS

On March 24, 1989, the United Parcel Service (UPS) office in Pocatello, Idaho received a package addressed to "Mike Wilson" but bearing a non-existent address. Upon opening the package to look for a more accurate address, the UPS manager discovered a small plastic bag containing a white powdery substance. The results of a preliminary field test conducted by an Idaho State Police narcotics investigator indicated the powder to be methamphetamine,[1] a controlled substance. The investigator also determined that the gross weight of the substance was 22.7 grams. Later that afternoon an individual identifying himself as Mike Wilson contacted the UPS office inquiring about a package he was expecting. UPS told him the package had arrived with an incorrect address and that it was not presently in the office. Wilson gave UPS his correct address as Route 1, Morgan Road, Pocatello, Idaho, and provided his telephone number.

Upon receiving this information, the investigator drove by the residence on Morgan Road and observed a vehicle parked in the driveway. A records check revealed the vehicle was registered to Mike Wilson and Jodi Sholes, and that Wilson owned the residence. Using the above facts, the investigator prepared an affidavit of probable cause to obtain a warrant for a search of the Morgan Road residence, seeking instrumentalities related to drug trafficking. The affidavit also alleged that, based upon his training and experience as a narcotics investigator, the affiant could conclude that (1) the amount of the controlled substance in the package was an amount intended for further distribution; (2) the controlled substance he observed had a retail value of $2,200 to $4,000; (3) drug traffickers receiving such large value of drugs generally do not allow the drugs to fall into the hands of persons other than themselves or individuals working directly for them; (4) preparing the methamphetamine for retail sale requires drug-packaging paraphernalia, including scales and baggies; and (5) drug traffickers commonly keep records and ledgers of drug transactions at their residences. The affidavit concluded by stating that there was probable cause to believe that drug-trafficking paraphernalia and other items evidencing the use and distribution of methamphetamine were located at Mike Wilson's residence. Based upon the affidavit, the magistrate issued a warrant authorizing a search of the residence for drug trafficking paraphernalia, along with any paraphernalia used in the sale and use of methamphetamine and other controlled substances.

The police then arranged to have Wilson pick up the package at the UPS office. After Wilson signed for the package and departed with it, the police arrested him. Moments later, pursuant to the search warrant, other law enforcement officials undertook a search of the residence on Morgan Road. When inside the home, one of the officers sensed a strong odor of marijuana coming from the basement and discovered approximately fifty marijuana plants. The search was suspended and the residence secured until another search warrant, based upon these latter observations, could be obtained. During this time, the defendant Jodi Sholes entered the residence. While speaking with the officers, Sholes admitted she resided at the house and she made incriminating statements concerning the marijuana in the basement. When the officer returned with a second warrant the search recommenced, resulting in the seizure of 8.6 pounds of marijuana, plus para-

---

**1.** Forensic testing later revealed that the substance in the package was cocaine, not methamphetamine.

phernalia, growing equipment and packaging materials.

## PROCEDURAL POSTURE

Based on the evidence obtained from the search, Sholes was charged with one count of possession with intent to deliver marijuana and one count of manufacturing marijuana. Thereafter, Sholes moved to suppress all evidence seized from the Morgan Road residence, which she claimed was obtained pursuant to an invalid warrant. Following a suppression hearing, the district court denied the motion. Sholes subsequently entered a conditional plea of guilty to manufacturing marijuana,[2] expressly reserving her right to challenge the district court's order denying her motion to suppress. I.C.R. 11(a)(2).

Sholes contends that the magistrate issued the initial search warrant without probable cause, in violation of her fourth amendment rights, and that all resulting "fruit" should have been suppressed pursuant to the exclusionary rule. She further urges that we reject the good-faith exception to the exclusionary rule announced in *Leon v. United States*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and applied in *State v. Prestwich*, 116 Idaho 959, 783 P.2d 298 (1989), at least insofar as that exception otherwise might be applied to the facts of this case. Because we find there existed probable cause to issue the search warrant, we need not address Sholes's *Leon* arguments.

## PROBABLE CAUSE

■ Basic to search warrant protections is the requirement of probable cause. Its function is to guarantee a substantial probability that the invasions involved in the search will be justified by discovery of offending items. 1 W. LAFAVE, SEARCH AND SEIZURE § 3.1(b), at 544–55 (2d ed. 1987). The magistrate is to base his or her determination of probable cause upon the "totality of the circumstances" presented.

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In reviewing the magistrate's issuance of the search warrant, our function is limited to ensuring that the magistrate had a substantial basis for concluding that probable cause existed, giving deference to the magistrate's determination. *Gates, supra; Lang, supra.*

> Recital of some of the underlying circumstances is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). *See also State v. Gomez*, 101 Idaho 802, 623 P.2d 110 (1980), *cert. denied*, 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981); *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979); *State v. Oropeza*, 97 Idaho 387, 545 P.2d 475 (1976).

Sholes avers that the facts and circumstances communicated to the magistrate were insufficient to support a determination of probable cause to issue the warrant. Her argument is two-fold. She first contends that the information in the affidavit was insufficient to support a reasonable inference that Wilson was involved in drug trafficking. Second, she claims there was no adequate nexus between the package containing drugs and Wilson's residence. We address these contentions in turn.

---

**2.** The guilty plea was entered pursuant to a plea bargain by which the state agreed to dismiss the possession charge.

642

### 1. Inference That Wilson Was Involved In Drug Trafficking

Sholes argues that the affiant's conclusion that instrumentalities and evidence of drug trafficking could be located at Wilson's residence was an extrapolation from the unfounded premise that Wilson was trafficking in drugs. She submits that the information in the affidavit established, at most, that Wilson attempted to possess, not distribute, drugs. We disagree.

■ The circumstances detailed in the affidavit show that Wilson had arranged to have controlled substances delivered directly to him at his home, and that the amount of controlled substances signified that they were intended for further distribution. From this information, the magistrate reasonably could infer that Wilson was involved in drug dealing. *See, e.g., State v. O'Campo*, 103 Idaho 62, 644 P.2d 985 (Ct. App.1982) (quantity of controlled substance as a factor giving rise to inference that defendant was a dealer). Sholes further asserts that, in the absence of information showing that Wilson dealt drugs in the past, the magistrate could not reasonably conclude that Wilson was a drug trafficker. Although we agree that proof of such facts might have lent additional support to the inference that Wilson was involved in drug dealing, its absence does not detract from the inference the magistrate reasonably could draw from the quantity of drugs alone. *O'Campo, supra.*

### 2. Nexus Between Criminal Activity and Wilson's Residence

■ In order to provide an adequate basis for a determination of probable cause to issue a search warrant, the assertions in the affidavit must establish a sufficient nexus between (1) criminal activity, (2) the things to be seized, and (3) the place to be searched. 2 LAFAVE, *supra,* § 3.7(d), at 101. Sholes submits that, regardless of whether the evidence suggested Wilson was involved in drug trafficking, there was nothing to connect that activity with Wilson's home except a package addressed to the wrong address and its actual delivery to Wilson at the UPS office, a location other than his residence.

■ Sholes accurately states that probable cause to believe that a person has committed a crime does not necessarily give rise to probable cause to search his or her home. *See* 2 LAFAVE, *supra,* § 3.7(d), at 103–105, *discussing Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361 (1975). However, this is not to say that there must exist definite proof that the instrumentalities of the criminal activity are kept at a suspect's residence, but only that there be some *additional facts* which would support the inference that the items are *probably* located there. *See United States v. Fanning*, 817 F.2d 1379 (9th Cir. 1987); *United States v. Angulo–Lopez*, 791 F.2d 1394 (9th Cir.1986).

■ In this case, no one directly observed drug-dealing paraphernalia in Wilson's house prior to the officer's search. However, there was proof that Wilson had arranged to have a substantial quantity of a controlled substance delivered to him *at his Morgan Road residence,* and that Wilson personally followed up on this plan. This proof, together with the narcotics investigator's expert opinion that drug-packaging paraphernalia and records of prior transactions are commonly kept at a dealer's home, adequately established the connection between Wilson's involvement with drugs and his residence.[3] *Angulo–Lopez*, 791 F.2d at 1399, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live. [Citations omit-

**3.** *Compare State v. Graven*, 12 Or.App. 126, 505 P.2d 933 (1973) (officer's observations of drug deal occurring on street did not, by itself, establish probable cause to issue warrant for search of suspect's home); *United States v. Gramlich*, 551 F.2d 1359 (5th Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977) (fact that suspect left his home to unload bails of marijuana did not provide probable cause for issuing warrant to search suspect's home, absent indicia of suspicious activity at the home); *United States v. Hendricks*, 743 F.2d 653 (9th Cir. 1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (defendant's address on contraband coming through customs was for identification purposes only, not delivery, and thus did not furnish nexus between criminal activity and defendant's residence).

ted.];" *Fanning,* 817 F.2d at 1312, "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found."

We recognize that it is *possible* that Wilson did not plan to redistribute the drugs at all, but to retain them for his own personal consumption. It also is *possible* that Wilson meant to transfer the drugs in bulk once he had received them. However, such possibilities do not negate the common-sense *probability* that the drugs were destined for a place where they would be prepared for further distribution.

## ANTICIPATORY WARRANT

Finally, we dispose of Sholes's contention that the warrant amounted to an illegal anticipatory warrant. The warrant issued in this case covered only instrumentalities and evidence of drug trafficking and was not issued for the purpose of seizing the contents of the package addressed to Mike Wilson. Because its execution was neither predicated upon the delivery of the package nor upon the occurrence of any other event, the warrant was not "anticipatory." *See State v. Wright,* 115 Idaho 1043, 1049, 772 P.2d 250, 256 (Ct.App.1989). Sholes' arguments to the contrary are therefore rejected.

## CONCLUSION

The magistrate was justified in determining there was probable cause to believe that items related to drug-dealing would be found at Wilson's residence. Accordingly, we conclude that the search warrant was valid and that the district court properly denied the motion to suppress. The judgment of conviction therefore is affirmed.

SWANSTROM and SILAK, JJ., concur.