818 P.2d 347

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael R. WILSON, Defendant–Appellant.**

**No. 18407.**

Court of Appeals of Idaho.

Oct. 3, 1991.

Ward, Maguire & Bybee of Pocatello for defendant-appellant. Martin R. Ward argued.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent. Myrna A.I. Stahman argued.

SWANSTROM, Judge.

Michael Wilson entered a conditional guilty plea to possession with intent to deliver cocaine, I.C. § 37–2732(a)(1)(A), and manufacture of a controlled substance, marijuana, I.C. § 37–2732(a)(1)(B), preserving his right to appeal from the denial of his motion to dismiss and his motion to suppress. I.C.R. 11. Wilson makes three arguments on appeal. He contends that the district court erred in not dismissing the possession charge against him when the state failed to prove the chain of custody of the seized evidence. He also contends that the district court should have suppressed the evidence obtained in a search of his residence due to a lack of probable cause to support the issuance of the two search warrants. Finally, Wilson argues that the imposition of a prison sentence, rather than probation, constituted an abuse of discretion by the sentencing judge. For the reasons explained below, we affirm the district court.

On March 24, 1989, a package addressed to Mike Wilson was received at the United Parcel Service (UPS) office in Pocatello. Unable to deliver the package because the address on the package was non-existent, a UPS employee opened the package attempting to find a more specific address for Mike Wilson. Instead, the contents

revealed a white powdery substance, which the employee suspected was a controlled substance. The employee turned the package over to his supervisor who contacted police narcotics agents. The supervisor kept the package in his office until the officers arrived.

A narcotics agent conducted a field test at the UPS office of the white substance, which indicated methamphetamines, and took custody of the package.[1] The narcotics agent then began an investigation and located a Mike Wilson at Route 1, Morgan Road, Pocatello. This information matched the corrected address obtained by UPS from a man who called identifying himself as Mike Wilson and inquiring about a next-day air package that he was expecting. The narcotics agent arranged a controlled delivery at the UPS office, and when Mike Wilson personally appeared to pick up the package on Monday, March 27, 1989, he was arrested as he left the UPS office in a vehicle with the parcel containing cocaine.

As part of his investigation, the narcotics agent drove by the Wilson residence on Morgan Road and ran checks on the ownership of the property and of the vehicle located on the property. He confirmed that Wilson was the owner of the residence and that Wilson and Jodi Sholes were the registered co-owners of the vehicle. The narcotics agent enumerated these facts in an affidavit prepared in support of a search warrant for the residence, wherein evidence of drug-packaging and dealing might be discovered. The narcotics agent further stated that the gross weight of the controlled substance delivered to Wilson totalled 22.7 grams and, based on the agent's training and experience, he concluded that this amount, with a retail value of $2,200 to $4,000, was intended for further distribution. The agent further stated that drug-packaging items would be necessary for distribution of such a large quantity. The agent concluded that packaging items would probably be found in the residence, along with records of sales transactions.

From the information supplied by the narcotics agent, the magistrate determined that there was probable cause to issue a search warrant authorizing a search of Wilson's residence for drug-packaging paraphernalia and other evidence of distribution and resale. Once in the residence, the officers smelled a strong odor of marijuana and saw fifty marijuana plants growing in the basement. The initial search was suspended until a second search warrant concerning the manufacture of a controlled substance, marijuana, was obtained. Based in part on the evidence obtained from the search, Wilson was charged with possession with intent to deliver a controlled substance, cocaine, and manufacture of a controlled substance, marijuana. Wilson's girlfriend, Jodi Sholes, who also lived at the residence, was subsequently charged with manufacture of a controlled substance, marijuana.[2]

Following the preliminary hearing, Wilson filed a motion to dismiss the charge of possession with intent to deliver and a motion to suppress the evidence obtained pursuant to the search of his residence. Wilson urged that the reliability of the physical evidence, the cocaine, had not been established, and should not have been admitted at the preliminary hearing. Without the cocaine in evidence, he contends, a dismissal of the cocaine charge was inevitable. Wilson also argued that the search warrant was not properly based on probable cause because the affidavit contained no facts which would lead to the conclusion that Wilson was a dealer or that drug-dealing paraphernalia would be located in the residence. The district court denied both defense motions.

On appeal from the denial of his motion to dismiss, Wilson contends that the district judge erred in admitting the cocaine without proof that the evidence had not been tampered with while it was in the UPS

---

1. Forensic testing later established that the substance in the package was cocaine, not methamphetamine.

2. Sholes has pursued a separate appeal of the district court's denial of her motion to suppress the evidence obtained under the two search warrants discussed herein. See *State v. Sholes,* 120 Idaho 639, 818 P.2d 343 (Ct.App.1991).

supervisor's office until the police seized the package. He argued that the state failed to present a witness who could account for the custody of the evidence during that one to one-and-one-half hour time period, creating a break in the chain of custody. Consequently, he contends the cocaine was admitted into evidence without the required foundation, which warranted a dismissal of the charge.

■ A trial court's determination whether evidence is supported by a proper foundation is reviewable under an abuse of discretion standard. *United States v. Miller,* 771 F.2d 1219, 1233 (9th Cir.1985); *State v. Griffith,* 94 Idaho 76, 81, 481 P.2d 34, 39 (1971).

> As a general rule in criminal proceedings, an exhibit must be shown to be in substantially the same condition when offered into evidence as it was when the crime was committed. However, the party offering the exhibit need not exclude all possibility of tampering.... Ordinarily, the party offering an exhibit establishes its chain of custody in order to create a presumption that it was not materially altered.

*State v. Crook,* 98 Idaho 383, 384, 565 P.2d 576, 579 (1977). Proof through a chain of custody, however, is not a separate requirement for admissibility. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). "The standard for the admissibility of evidence is whether the trial court can determine that, in all reasonable probability, the proffered exhibit has not been changed in any material respect." *Id.* at 715, 662 P.2d at 1159, *citing State v. Griffith, supra.*

■ In the record is the testimony of the UPS employee who broke open the package and the testimony of the narcotics agent who eventually took custody of the package. It is true that the UPS supervisor, who had control of the package between the possession of the two witnesses, was not called to testify, but Wilson offered no evidence of tampering or any evidence that would raise a suspicion that the evidence had been altered during the supervisor's possession of the package. Mere speculation is insufficient to establish a break in the chain of custody. *People v. LeMasters,* 666 P.2d 573 (Colo.App.1983), *aff'd* 678 P.2d 538 (Colo.1984). Neither is it necessary to show that there is no possibility that the evidence was tampered with. *State v. Amaya–Ruiz,* 166 Ariz. 152, 800 P.2d 1260 (1990).

■ Wilson has not cited to us any authority which imposes an obligation to establish a continuous chain of possession of the cocaine before the acquisition of the evidence by police officers. *But see State v. Walton,* 222 Mont. 340, 722 P.2d 1145 (1986). Furthermore, it has been held that any objection to the admissibility of an exhibit, based on questionable identity and authenticity, goes to the weight to be accorded the evidence, not to its admissibility. *State v. Thomas,* 94 Idaho 430, 489 P.2d 1310 (1971). *See also State v. DeSilva,* 64 Haw. 40, 636 P.2d 728 (1981); *State v. Wynia,* 754 P.2d 667 (Utah App.1988), cert. denied, 765 P.2d 667 (Utah 1988); *State v. Saunders,* 30 Wash.App. 919, 639 P.2d 222 (1983). The district judge's conclusion that the evidence had not been tampered with was not in error, and accordingly, he did not abuse his discretion in ruling that the evidence was admissible. We uphold the district court's denial of Wilson's motion to dismiss.

The second contention made by Wilson on appeal is that the warrant for a search of his residence lacked probable cause. He argues that the affidavit used to secure the warrant contained only the conclusions of the narcotics officer and contained insufficient facts from which the magistrate could infer that drug paraphernalia would be found at the Wilson residence. In other words, Wilson asserts that, in the absence of any knowledge of the officer linking the residence with criminal activity, the warrant was flawed, and any evidence obtained under the warrant was subject to suppression.

The factual statements in the affidavit significant to our evaluation of whether probable cause existed to issue the warrant are: (1) the gross weight of the suspected methamphetamine was 22.7 grams and (2) that the package containing the controlled substance, addressed to Mike Wilson, was

meant for delivery to a residence which was confirmed to be that of Wilson. Also contained in the affidavit were the narcotics agent's conclusions, based on his training and experience, that the amount of the controlled substance in the package suggested that it was intended for further distribution and that such resale might require packaging equipment and other such drug paraphernalia. The resulting warrant authorized the search of Wilson's residence not for more drugs, but for drug paraphernalia, repackaging materials and any records indicative of distribution and resale.

■ Basic to search warrant protections is the requirement of probable cause. Its function is to guarantee a substantial probability that the invasions involved in the search will be justified by discovery of offending items. 1 W. LAFAVE, SEARCH AND SEIZURE § 3.1(b) at 544–55 (2d ed. 1987). The magistrate is to base his or her determination of probable cause upon the "totality of the circumstances" presented. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In reviewing the magistrate's issuance of the search warrant, our function is limited to ensuring that the magistrate had a substantial basis for concluding that probable cause existed, giving deference to the magistrate's determination. *Gates, supra; Lang, supra.*

> Recital of some of the underlying circumstances is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than common sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *see also State v. Gomez,* 101 Idaho 802, 623 P.2d 110 (1980), *cert. denied,* 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981); *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979); *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976); *State v. Gauna,* 117 Idaho 83, 785 P.2d 647 (Ct.App.1989).

■ Wilson contends that there was no basis to implicate his residence without direct knowledge that Wilson was otherwise involved with illegal drugs or other criminal activity at the residence. Contrary to these claims, however, and because the probable cause standard is an objective one, the experience and expertise of the officer making the arrest or search may be taken into account in making a probable cause determination. *See* 1 W. LAFAVE, SEARCH AND SEIZURE § 3.2(b) at 570 (2d ed.1987). Moreover, a magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Hill,* 936 F.2d 450, 457 (9th Cir.1991), *quoting United States v. Angulo–Lopez,* 791 F.2d 1394 (9th Cir.1986); *see also United States v. Fannin,* 817 F.2d 1379, 1380–81 (9th Cir.1987).

■ We believe that the inferences drawn by the magistrate were not unreasonable in this case. The gross weight of the controlled substance seized is more consistent with a dealer amount than a user amount and drug paraphernalia necessary for redistribution would probably be present at the address to which the package containing the controlled substance was mailed. We conclude that the officer's affidavit presented a substantial basis for the magistrate to conclude that probable cause was present to search Wilson's residence for evidence of drug repackaging and records of sale. We uphold the warrant and affirm the order of the district court refusing to suppress the fruits of the search of Wilson's residence.

Wilson's third issue on appeal, the excessive sentence, was withdrawn at oral argument by counsel for Wilson and requires no further comment.

We affirm the district court's order denying the motion to dismiss and the order denying the motion to suppress.

WALTERS, C.J., and SILAK, J., concur.