873 P.2d 891

STATE of Idaho, Plaintiff–Respondent,

v.

Jose MOLINA, Defendant–Appellant.

No. 19668.

Court of Appeals of Idaho.

Dec. 14, 1993.

Rehearing Denied Feb. 18, 1994.

Petition for Review Denied June 2, 1994.

638

Rettig, Rosenberry, Lovan & Pangburn, Caldwell, and Rolf M. Kehne, Boise, for defendant-appellant. Rolf M. Kehne argued.

Larry Echohawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for plaintiff-respondent. Douglas A. Werth, argued.

SILAK, Acting Judge.

Jose Molina entered a conditional plea of guilty to possession of marijuana with intent to deliver, reserving his right to appeal the district court's denial of his motion to suppress evidence. On appeal, Molina asserts the district court should have excluded the challenged evidence because there was no probable cause to issue the search warrant which led to the discovery and seizure of the evidence. For the reasons stated below, we affirm the district court's denial of Molina's suppression motion.

## FACTS AND PROCEDURAL BACKGROUND

On February 7, 1991, the Canyon County Prosecutor's Office applied to the magistrate for three warrants to search for illegal drugs and other evidence of drug crimes: one to search the residence of Ramiro Banuelos, one to search Banuelos's vehicle, and one to search Molina's residence. In support of the warrant applications, the state presented the oral affidavit of Officer Denton Hill, a detective of the Owyhee County Sheriff's Office who was assigned to work in the local City/County Narcotics Unit. After hearing Hill's testimony, the magistrate issued all three search warrants. During the search of Molina's residence conducted later that day, officers found five pounds of marijuana. The prosecutor subsequently obtained a two-count indictment against Molina charging him with possession of marijuana with intent to deliver and an enhanced penalty for having a prior drug-related conviction.

Before trial, Molina filed a motion to suppress the evidence seized at his residence, claiming that the warrant to search his residence was issued without probable cause to believe that drugs or any other evidence of crime would be found there. Molina asserted that some of the evidence presented by Hill was obtained through an unlawful wire tap, and that other portions of Hill's oral affidavit contained material misrepresentations which should not have been considered by the magistrate in determining whether probable cause existed to search his residence. Finally, Molina contended that even if all the information contained in Hill's affidavit was properly considered by the magistrate in making his probable cause determination, that information nevertheless failed to establish probable cause to search Molina's residence. The district court denied Molina's motion to suppress, as well as a subsequent motion to reconsider. Thereafter, Molina entered a conditional plea of guilty to possession of a controlled substance with intent to

deliver, reserving the right to challenge the district court's denial of his suppression motion.

## ANALYSIS

■ Molina's appeal requires us to determine whether there was probable cause for the magistrate to issue the warrant to search his residence. For a search warrant to be valid, it must be supported by probable cause. U.S. CONST. amend. IV; IDAHO CONST. art. I. § 17. A search conducted pursuant to a warrant which is invalid for lack of probable cause is unlawful, and all evidence seized as a result of such a search must be suppressed. *State v. Johnson*, 110 Idaho 516, 528, 716 P.2d 1288, 1300 (1986).

■ In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court established a "totality of the circumstances" test for determining whether probable cause exists to issue a search warrant. Under this test, which was adopted by Idaho's Supreme Court in *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983):

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. In reviewing a magistrate's determination of probable cause, we look at the warrant affidavit submitted to the magistrate to determine whether it provided the magistrate with a substantial basis for concluding that probable cause existed. *Lang*, 105 Idaho at 684, 672 P.2d at 562. Further, reviewing courts are to accord great deference to the probable cause determinations of magistrates. *Id.*

The warrant to search Molina's residence was based entirely on Officer Hill's oral affidavit. Thus, we must examine the information in Hill's affidavit to determine whether it provided a substantial basis for the magistrate to find there was a fair probability contraband or other evidence of crime would

be found at Molina's residence at the time the search warrant was issued.

■ Molina has challenged evidence which the state obtained through a pen register and wire tap, contending that the orders authorizing use of those devices were invalid. Because Hill did not present the magistrate with any information derived from those devices which was probative of whether contraband or other evidence of crime would be found in Molina's home on February 7, 1991, we need not address the validity of the pen register and wire tap.

■ The great majority of the evidence presented by Hill in his warrant affidavit pertained to drug trafficking activities of Banuelos and persons who transported and distributed drugs for Banuelos, without any reference to involvement by Molina. Hill's affidavit does contain two conclusory statements to the effect that Molina was a close business associate of Banuelos and that Banuelos and Molina were co-heads of the same drug organization. The state asserts that, because of this allegedly close association between Banuelos and Molina, evidence about drug trafficking by Banuelos also implicated Molina; specifically, evidence that Banuelos had just received a shipment of cocaine was evidence that Molina also had recently received a shipment of cocaine. We disagree, noting that there is nothing in Hill's affidavit from which the magistrate could have reasonably inferred that Molina was either a close business associate or a co-head of the drug organization with Banuelos. Had the magistrate reached such a conclusion, he would have merely been ratifying the bare conclusions of Hill, something which is prohibited by our Constitutions. *State v. Johnson*, 110 Idaho 516, 527, 716 P.2d 1288, 1299 (1986). Accordingly, in determining whether the information Hill presented to the magistrate established probable cause to search Molina's residence, we will discuss only those facts presented by Hill which make express or implied reference to drug trafficking by Molina.

At the probable cause hearing, Hill testified regarding evidence discovered during trash searches. He also testified about an attempted purchase of cocaine from Molina

in December, 1990, in which Molina had shown an informant an ounce of cocaine, and told the informant that if the informant would return in a half hour he (Molina) would go to his residence, "cut" the ounce of cocaine into half ounces, and then return to sell the informant a half ounce. Hill further testified that confidential informants had "gained the information that there [would] be cocaine available for sale by these subjects as of today's date [February 7, 1991]," and that earlier in the week Molina had paid off a person by the name of Huarache for some drugs. We must determine whether this information provided by Hill established probable cause to search Molina's home for drugs or other evidence of crime on February 7, 1991.

Hill's testimony about the attempted drug buy from Molina in December, 1990, was as follows:

> Back in December, I can't recall the exact date at this time, CI [confidential informant]—587 attempted to purchase a half ounce of cocaine from Jose Molina. At that time I was later advised by the CIs that at that time Jose Molina showed CI–587 an ounce of cocaine. The CI did not have enough money to purchase the full ounce, so Jose Molina advised that he would have to return to his residence and cut the half—or cut the ounce into a half. During the time of the CI–587 meeting with Jose Molina and the time that Jose Molina was to return to the location where CI–587 was, Jose Molina observed a surveillance car in the area which he knew to be a narcotics surveillance vehicle and officer. At that time he shut the purchase down.

Hill's testimony of the attempted controlled purchase from Molina was hearsay information obtained through a confidential informant. Under the "totality of circumstances" test, the veracity, reliability and basis of knowledge of the informants supplying the hearsay information are all highly relevant in determining the value of the hearsay information and, thus, in making the determination of probable cause. *State v. Thompson*, 114 Idaho 746, 753, 760 P.2d 1162, 1169 (1988). The magistrate can assess the verac-

ity of the informant by considering evidence of the informant's general credibility and/or the reliability of the particular information provided by the informant. *State v. McAndrew*, 118 Idaho 132, 134, 795 P.2d 26, 28 (Ct.App.1990). The magistrate can assess the basis of the informant's knowledge by considering the underlying circumstances from which the informant received the information or by considering whether the informant's information is so detailed that it becomes self-verifying. *Id.*

Regarding the credibility of CI–587, Hill testified that both CI–587 and CI–592 had provided detailed and accurate information over the past several months, that they had actually assisted officers in making controlled purchases of cocaine on a number of occasions, and that he (Hill) had never found any of the information provided by these informants to be in error. The basis of CI–587's knowledge concerning the attempted drug buy was CI–587's own personal knowledge of what he/she observed as he/she attempted to purchase cocaine from Molina. We conclude that the hearsay information about the attempted drug buy in December of 1990 was sufficiently reliable, and that it provided a substantial basis for the magistrate to conclude that Molina was distributing significant quantities of cocaine in December of 1990.

Hill's affidavit also provided the magistrate with a substantial basis for concluding that Molina had illegal drugs in his possession on February 7, 1991, the date of the probable cause hearing. At the hearing, Hill testified:

> We also had word that the subject by the name of Huarache ... received money from Jose Molina earlier this week, reference, according to CI–587, payoff for some drugs that were sold.

Thus, according to Hill, CI–587 reported that Molina had paid off "Huarache" for some drugs earlier in the week. With respect to this information, Hill did not inform the magistrate of the basis of CI–587's knowledge, nor is there any evidence that the reliability of this information was supported by corroborating evidence obtained through indepen-

dent police investigation. *See State v. Schaffer*, 107 Idaho 812, 817, 693 P.2d 458, 463 (Ct.App.1984) (although conclusory statements by unnamed informant will not suffice to show probable cause, other information gathered by independent investigation might provide additional quantum of evidence required). However, as mentioned above, the credibility of CI–587 had been established by Hill's testimony that CI–587 had been providing officers with accurate information for months, and that CI–587 had actually made a number of controlled purchases to assist the officers in their investigation. We conclude that this report by CI–587 was sufficiently reliable to establish probable cause to believe that Molina had purchased drugs during the week prior to the probable cause hearing. From this, the magistrate could have reasonably inferred that Molina had recently obtained a quantity of illegal drugs, and that he still had those drugs in his possession at the time of the probable cause hearing.

However, we do not reach the same conclusion with respect to Hill's statement that the informants had "gained the information that there is going to be cocaine available for sale by these subjects as of today's date." This hearsay information is not sufficiently reliable to form the basis of determining probable cause. Hill did not provide the magistrate with any of the underlying circumstances which formed the basis of the informants' knowledge that Molina would have drugs for sale on the date in question. Nor did Hill provide any evidence gained through independent investigation to corroborate the informants' report that Molina would have cocaine available for sale on that date. Hill's affidavit contains a substantial amount of evidence to corroborate the information that Banuelos would have cocaine available for sale on this date, but Hill did not present any facts to corroborate this information with respect to Molina. Although, as stated above, Hill provided the magistrate with information to establish the credibility of these informants, there is nothing in Hill's affidavit which allows the magistrate to assess the reliability of this particular information. Even the most truthful of informants may be mistaken, thus it is important for the magistrate not only to be able to assess the truthfulness of the informant, but to be able to assess the basis of the informant's knowledge. Hill's statement that the informants had "gained the information that there is going to be cocaine available for sale by these subjects as of today's date" is similar to the statements in warrant affidavits which were found to be inadequate in the cases of *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) (affiant "has cause to suspect and does believe" that illegal liquor is on premises), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ("[a]ffiants have received reliable information from a credible person and do believe" that heroin is stored in a home). In *Gates*, the Supreme Court held that such conclusory statements give the magistrate "virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332. We conclude the hearsay information that Molina would have cocaine available for sale as of the date of the probable cause hearing was inadequate to be considered in making the probable cause determination. Even so, as we noted above, Hill's testimony that CI–587 reported that Molina paid off Huarache for some drugs earlier in the week provided a substantial basis for concluding there was probable cause to believe Molina had drugs in his possession at the time of the probable cause hearing.

However, our inquiry does not end with the conclusion that the magistrate had a substantial basis to determine there was probable cause to believe that Molina was a drug dealer, and that he had drugs in his possession on February 7, 1991. In order to obtain a warrant to search Molina's residence, there must be probable cause to believe that that is where the drugs are currently located.

Probable cause to search requires a finding of probability of criminal activity, and a finding or probability of concealment of evidence on specific premises. *United States v. Apker*, 705 F.2d 293, 303 (8th

Cir.1983). "[T]hat there is probable cause to obtain a search warrant goes to the connection of the items sought with the crime and the present location of the items." W.E. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS § 4.1(a) at 4–4, 4–5 (2d ed. 1991).

*State v. Fairchild,* 121 Idaho 960, 966, 829 P.2d 550, 556 (Ct.App.1992). Although probable cause to believe that a person has committed a crime does not necessarily give rise to probable cause to search that person's home, *see* 2 LaFave, *supra,* § 3.7(e), at 103–105, *discussing Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361 (1975), magistrates are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *State v. Wilson,* 120 Idaho 643, 647, 818 P.2d 347, 351 (Ct.App. 1991) (citations omitted).

Hill's affidavit contains two statements which the magistrate might have construed as connecting Molina's residence to illegal drugs or evidence of drug crimes. The first we consider is Hill's statement regarding evidence found during trash searches. At the hearing, the deputy prosecutor asked Hill the following question: "you request to be able to search in *these two residences* for books, ledgers, person papers, banking and tax records, and other documents related to and concerning the distribution of controlled substances. Could you tell us why that is please?" To this Hill responded:

> We had done several different garbage collections at *this residence.* We are finding information such as receipts, et cetera, in the trash. We do believe that there will be more receipts at the residence, possibly ledgers showing the business, the different transactions, money owed for the narcotics, as well as proof of who might all be involved.

Hill's answer is ambiguous and misleading because it implies that his request for a warrant to search *Molina's* residence is supported by information obtained during trash searches at "this residence." In fact, Hill later admitted at the hearing on reconsideration that no trash search was ever performed

at Molina's residence, only at the residence of Banuelos. However, even if Hill's statement was not misleading and the trash searches had been performed at Molina's residence, this testimony would still provide no basis for finding probable cause to search Molina's residence. Hill simply stated that trash searches had been performed in which officers found "information such as receipts, et cetera, in the trash." Hill did not state, and the magistrate did not ask, what these receipts were for, or how they in any way indicated that there was contraband or other evidence of a crime inside the residence. Receipts found in residential garbage may have little, great, or no probative value with respect to the presence of contraband or criminal activities going on inside the residence. In *Gates, supra,* the Supreme Court held that conclusory statements such as this give the magistrate "virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates,* 462 U.S. at 239, 103 S.Ct. at 2333. Absent any information concerning the nature of the receipts discovered in this case, the magistrate would have had to rely on the bare conclusion of Hill that the receipts indicated the presence of contraband or other criminal evidence inside the residence. That conclusion was for the magistrate to make, not the police. *Johnson,* 110 Idaho at 527 n. 13, 716 P.2d at 1299 n. 13. Accordingly, Hill's statement that receipts had been discovered during trash searches is inadequate to be included in the totality of circumstances considered by the magistrate in making his probable cause determination.

The only other evidence from which the magistrate might have inferred that drugs were located at Molina's residence was Hill's reference to Molina's residence in his testimony concerning the attempted drug buy in December, 1990. Hill testified that during the attempted buy "Molina advised that he would have to return to his residence and . . . cut the ounce into a half." The state asserts that it can be inferred from this testimony that Molina used his residence in connection with his drug dealing.

In the suppression hearing, and the hearing on reconsideration, Molina asserted that Hill's testimony that Molina said he was going to his "residence" to divide the cocaine was false and misleading, and therefore should not be included in the totality of circumstances considered in determining whether probable cause existed to search his residence. In fact, the informant had been wired with a transmitter during the attempted drug buy, and a recording and transcript of the conversation between the informant and Molina reveal that Molina never indicated to the informant where he was going to divide the cocaine, only that he would "go and break it," and that they should meet again in a half hour. Thus, Hill's testimony that Molina told the informants he was going to his residence to cut the cocaine was false.

In *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979), the Supreme Court adopted the rule of *Franks v. Delaware,* 438 U.S. 154, 172, 98 S.Ct. 2674, 2684–2685, 57 L.Ed.2d 667 (1978), that in order to impeach testimony in a warrant affidavit, the defendant must show not only that the testimony was false, but that it was a knowing and intentional misrepresentation, or that it was presented with reckless disregard for the truth. A negligent or innocent misrepresentation, even if necessary to the finding of probable cause, does not affect the validity of the warrant. *Lindner,* 100 Idaho at 41, 592 P.2d at 856.

> If the [affiant] acted innocently or negligently in presenting false information to the magistrate, the story is beyond impeachment and must be included in the "totality of circumstances" considered in determining whether the magistrate had a "substantial basis" to find probable cause. Conversely, if the false information was given intentionally, or was the product of a reckless disregard for the truth, then it must be set aside and the magistrate's finding of probable cause must be reviewed upon the remaining evidence.

*State v. Schaffer,* 107 Idaho 812, 820, 693 P.2d 458, 466, citing *Franks,* 438 U.S. at 172.

At the hearing to reconsider Molina's motion to suppress, the district court heard testimony from officer Alan Creech, who testified that he was among the officers conducting surveillance during the attempted drug buy from Molina in December, 1990. Creech testified that when Molina left to divide the cocaine, he (Creech) drove his vehicle to a location where he could observe vehicles turning onto Madison Avenue, the dead end street where Molina's residence was located. Creech further testified that within a short time, he observed Molina in his vehicle turn and drive up Madison Avenue in the direction of his residence. Creech related that after he saw Molina drive up Madison Avenue, he (Creech) left that location and drove a few blocks away, where he again saw Molina. Creech stated that it was at that point that Molina observed him, and because Molina knew that Creech was a narcotics investigator, Molina "shut the purchase down." Creech also testified that he kept officer Hill informed by radio of all these events as they were happening. Based on Creech's testimony, the district court concluded that although Hill's statement to the magistrate—that Molina told the informant he was going to his residence to divide the cocaine—was false, the misstatement was neither intentional nor reckless. The district court concluded that the information that Molina went to his residence was true, but Hill was just mistaken about the source of that information; it was his fellow officer, Creech, not the informants who informed Hill that Molina went to his residence. Having reviewed Creech's testimony, we conclude that this finding of the district court is supported by substantial competent evidence. Because Hill acted innocently or negligently in presenting false information to the magistrate, the information "is beyond impeachment and must be included in the 'totality of circumstances' considered in determining whether the magistrate had a 'substantial basis' to find probable cause." *Schaffer,* 693 P.2d 458, 466, citing *Franks,* 438 U.S. at 172.

We must next consider whether the fact that Molina went to his residence to cut an ounce of cocaine in December, 1990, gave the magistrate a "substantial basis" to find there was probable cause to believe that the illegal drugs in Molina's possession on February 7, 1991, were located at his residence.

■ As noted above, magistrates are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *State v. Wilson,* 120 Idaho 643, 647, 818 P.2d 347, 351 (Ct.App.1991) (citations omitted). Nevertheless, there must be some facts, in addition to the finding of probable cause that the person has committed a crime, which would support a finding that there is a fair probability that the items sought are in the location which the officers seek to search. *State v. Sholes,* 120 Idaho 639, 642, 818 P.2d 343, 346 (Ct.App.1991) (citations omitted). In this case, the likelihood that Molina currently had drugs somewhere in his possession, coupled with the fact that Molina had previously taken drugs to his residence in the course of a drug transaction, gave the magistrate a substantial basis for determining there was a fair probability that the drugs currently in Molina's possession would be found at Molina's residence. Because the magistrate had a substantial basis for determining that probable cause existed to search Molina's residence for illegal drugs or other evidence of drug crimes, we affirm the district court's order ·denying Molina's motion to suppress.

## CONCLUSION

Having carefully reviewed the totality of the circumstances presented to the magistrate in Hill's affidavit, we hold that there was a substantial basis upon which the magistrate could have found a fair probability that contraband or other evidence of crime would be found inside Molina's home on February 7, 1991. Therefore, we affirm the district court's denial of Molina's motion to suppress.

WALTERS, C.J., and SWANSTROM, J. Pro Tem, concur.