922 P.2d 1081

**STATE of Idaho, Plaintiff–Respondent,**

v.

**William HAGEDORN, Defendant–Appellant.**

**No. 21739.**

Court of Appeals of Idaho.

July 25, 1996.

Petition for Review Denied Sept. 20, 1996.

Michael L. Henegen and Robert P. Tunnicliff, Moscow, (argued), for appellant.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, (argued), for respondent.

PERRY, Judge.

Following a court trial, William Hagedorn was found guilty of second degree murder in the death of his girlfriend, Joann Romero, and was sentenced to a unified life term with a minimum period of confinement of thirty years. He appeals from the judgment of conviction and sentence. We affirm.

## I.

### FACTS

On the evening of October 26, 1993, Hagedorn called 911 to report a shooting at his home in Moscow. An emergency medical team arrived and attended to the victim, who

had a wound to her right side and was gasping for breath. Within minutes, officer Whiteley of the Latah County Sheriff's Office also arrived in response to the 911 call. Officer Whiteley found Hagedorn in the living room, wearing pants that were covered in blood. He spoke with Hagedorn and learned that Romero and Hagedorn lived together in the residence, that they had been drinking and arguing and that the shooting took place in the back bedroom. Romero was taken to the hospital where she died several hours later.

Before Hagedorn was driven to the hospital, officer Whiteley had Hagedorn remove the bloody pants. Officer Whiteley inquired where he could find Hagedorn a change of clothes; and he, not Hagedorn, went into the back bedroom to get the clothes. On the floor of the bedroom was a pile of bloody clothes and the gun which apparently had inflicted the wound to Romero, both of which the officer left undisturbed. Another officer escorted Hagedorn to the hospital, while officer Whiteley remained at the residence to continue his investigation and collect evidence from the possible crime scene. Hagedorn asked officer Whiteley to lock up when he was finished. Later that night, Hagedorn was arrested and charged with first degree murder. After a preliminary hearing, an amended information was filed amending the charge to second degree murder.

Hagedorn was tried, but the trial ended in a mistrial when the jury was unable to reach a verdict. A second trial was scheduled. Against the advice of his counsel, Hagedorn requested that he be tried by the court, not a new jury. The district court questioned Hagedorn at length and accepted the waiver of his right to trial by jury. After considering all of the testimony presented, the district court found Hagedorn guilty of second degree murder and sentenced him to life imprisonment, with a minimum term of confinement of thirty years.

## II.

### ISSUES

On appeal, Hagedorn raises several issues regarding whether certain evidence seized by the police at Hagedorn's home should have been admitted at trial. He argues that his motion to suppress this evidence was improperly denied. He also argues that Romero's shirt, state's exhibit 8, was inadmissible without foundational evidence explaining the alterations done to the shirt. The alterations ultimately led to the discovery of another bullet hole which supported the state's theory that two shots had been fired at Romero. Lastly, Hagedorn contends that his sentence is excessive.

## III.

### ANALYSIS

#### A. Evidence Obtained Without a Warrant

Hagedorn first argues that the district court erred in denying his motion to suppress evidence found in the residence by officer Whiteley. Although he concedes that the initial entry of the police into his home was authorized, he argues that the seizure of the items did not occur until after officer Whiteley had exited the house to obtain from his car evidence bags and a camera and had reentered the building. Because the second entry into the residence was unauthorized and not pursuant to a warrant, Hagedorn argues that the search of the premises and subsequent seizure of items at that time denied him the protections guaranteed under the Fourth Amendment.

 Warrantless searches or seizures are presumptively unreasonable unless they come within one of several judicially recognized exceptions to the warrant requirement for the seizure of evidence. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989). Plain view is a recognized exception to the warrant requirement. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *State v. Claiborne*, 120 Idaho 581, 818 P.2d 285 (1991). The exception addresses concerns regarding the invasion of an owner's possessory interest in and dominion over the items seized. *Maryland v. Macon*, 472 U.S. 463, 469, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1985); *United States v. Jacob-*

*sen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

■ Under the plain view doctrine, a warrantless seizure can be justified where two requirements are met: (1) the officer must lawfully make an initial intrusion or otherwise properly be in a position to observe a particular area; and (2) it must be immediately apparent that the items observed are evidence of a crime or otherwise subject to seizure. *See generally Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In reviewing an order denying a motion to suppress evidence, the appellate court will not disturb the district court's determinations of fact which are based upon substantial evidence, but we exercise free review of the lower court's decision as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Rusho,* 110 Idaho 556, 559, 716 P.2d 1328, 1331 (Ct.App.1986).

Here, the district court ruled that the warrantless seizure of the items from Hagedorn's home was not the result of a search but was justified under the plain view doctrine. As an alternative basis to justify the seizure, the district court found that Hagedorn had consented to allow officer Whiteley to remain in the residence to investigate, and that Hagedorn's telling the officer to lock up after he was through was tantamount to consent to a thorough search.

■ The district court found that officer Whiteley had a right to enter Hagedorn's house in responding to the 911 call and that he had obtained Hagedorn's consent to enter the back bedroom to get Hagedorn a change of clothes. The district court also found that Hagedorn's bloodstained pants, the gun in the bedroom, the victim's clothing lying near the bloody spot on the floor in the bedroom and the ammunition in the open hall cupboard might have been evidence of a crime. These findings, none of which are contested by Hagedorn, satisfied the two-part test for plain view that the items be lawfully viewed and be of a potentially incriminating nature. The findings therefore support the district court's application of the plain view doctrine and render a search warrant unnecessary to justify the seizure of these items. *See State*

*v. Ramirez,* 121 Idaho 319, 824 P.2d 894 (Ct.App.1991) (Seizure of property in plain view involves no invasion of privacy and requires no warrant.). The district court's order denying suppression of these items was proper.

■ Officer Whiteley's investigative search of Hagedorn's residence, which was not conducted subject to a search warrant, revealed a holster under the bed in the back bedroom. The holster cannot be held to have been seized under the plain view doctrine as plain view connotes that the object is observable and not hidden and not requiring that anything be moved in order to perceive the evidence. *McDermott v. State,* 870 P.2d 339, 345 (Wyo.1994). *See also State v. Rhodes,* 315 Or. 191, 843 P.2d 927, 930 (1992) (officer's action permitted him to observe what he otherwise could not have seen from a lawful vantage point). We conclude that the holster should have been suppressed. However, because no prejudice from its admission has been shown, *i.e.,* that the error contributed to the conviction, we deem the error harmless. *State v. Rodriquez,* 106 Idaho 30, 33, 674 P.2d 1029, 1032 (Ct.App.1983).

■ Hagedorn's contention that the officer's reentry into the residence defeated the application of the plain view doctrine, calling for the suppression of the seized evidence, is without merit. In *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the later entries made within hours of the initial intrusion, were "no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence." *Id.* at 511, 98 S.Ct. at 1951. *See also State v. Gocken,* 71 Wash.App. 267, 857 P.2d 1074, 1082 (1993); *State v. Stevenson,* 55 Wash.App. 725, 780 P.2d 873 (1989). We conclude that officer Whiteley's immediate reentry, upon retrieving a camera to photograph the scene and evidence bags to collect the evidence, was authorized without a warrant and did not affect the admissibility of the evidence under the plain view exception to the warrant requirement.

## B. Validity of the Search Warrant

Following officer Whiteley's seizure of evidence, a search warrant for a search of the residence was obtained. The search, pursuant to the warrant, yielded further evidence. Hagedorn seeks to have the validity of the search warrant overturned in this appeal. He asserts that the warrant was issued pursuant to an affidavit which contained information obtained from the illegal search of his residence by officer Whiteley and from interviews obtained in violation of his rights. He also challenges the warrant on procedural grounds, claiming that the state failed to return the warrant in accordance with Idaho Code §§ 19–4415 and –4406.

■■■ Whether probable cause exists to support the issuance of a search warrant is determined by the magistrate from the facts set forth in affidavits and from recorded testimony in support of the application for the warrant. *State v. Josephson*, 123 Idaho 790, 852 P.2d 1387 (1993). The magistrate is to base the determination of probable cause on the totality of the circumstances presented. U.S. Const. Amend. IV; *State v. Sholes*, 120 Idaho 639, 818 P.2d 343 (Ct.App.1991). Assertions in the affidavit must establish a sufficient nexus between criminal activity, things to be seized and the ·place to be searched to lead to the issuance of a warrant. *State v. Sorbel*, 124 Idaho 275, 858 P.2d 814 (Ct.App.1993).

■■■ In light of our conclusion that there was no illegal entry by officer Whiteley, those facts contained in the affidavit which were derived from his efforts were properly considered by the magistrate in issuing the warrant. *But see State v. Johnson*, 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986); *State v. Mason*, 111 Idaho 916, 728 P.2d 1325 (Ct.App.1986) (Fruits of a Fourth Amendment violation must be excluded in determining whether probable cause existed for issuance of a search warrant.). From our reading of the record, none of Hagedorn's post-arrest statements were used in obtaining the warrant. In fact, the district court suppressed the post-arrest statements. Therefore, Hagedorn's claimed error in the affidavit underlying the warrant cannot compel a quashing of the warrant.

Hagedorn refers to I.C. § 19–4415, which requires that a warrant be returned "forthwith," and I.C. § 19–4406, which mandates that the items seized be brought before the court. Asserting that the return of the warrant did not comply with these requirements, he argues that the warrant be quashed and the items seized thereunder be suppressed.

■■■ The district court upheld the validity of the warrant, concluding that the warrant was returned within the statutory framework. The district court further held that any error in the return of the warrant must be shown to have contributed to the conviction, causing prejudice to the defendant, a showing which was not made in this case. *See State v. Bussard*, 114 Idaho 781, 760 P.2d 1197 (Ct.App.1988); *Mason*, 111 Idaho at 667, 726 P.2d at 779 (Defects in the return of a search warrant are not of constitutional dimension and do not merit suppression in the absence of showing of prejudice.). We concur in the district court's analysis. We conclude that any evidence obtained pursuant to the search warrant was properly admissible.

## C. Admissibility of Romero's Shirt

Hagedorn next argues that the admission of exhibit 8, the shirt that Romero was wearing when she was shot, was reversible error. Because it was undisputed that the shirt—when offered in evidence—was not in the same condition as the shirt was at the time of the crime, Hagedorn asserts that the district court erred by finding that the shirt had not been materially altered. He argues that the shirt should not have been admitted, particularly where no foundation was given from the persons who were responsible for altering the shirt, nor were any explanations offered as to why the alterations were made.

■■■ A trial court's determination whether evidence is supported by a proper foundation is reviewable under an abuse of discretion standard. *State v. Wilson*, 120 Idaho 643, 646, 818 P.2d 347, 350 (Ct.App. 1991). The admissibility of evidence purporting to be in substantially the same condition when offered as it was when the crime was

committed is a matter within the discretion of the trial court. *State v. Kodesh,* 122 Idaho 756, 838 P.2d 885 (Ct.App.1992). It is not necessary that an object which is offered in evidence should be in precisely the same condition at the moment of its offer as at the time when the object played a part in the occurrence which gave rise to its offer in evidence. *State v. Griffith,* 94 Idaho 76, 81–82, 481 P.2d 34, 39–40 (1971). But the change in the object's condition must not be of sufficient moment so that the exhibit will mislead. *Id.*

█ Romero's shirt was included in the evidence that the state sought to admit at trial. The emergency medical technician who examined Romero for wounds testified that he had cut off Romero's clothes with scissors. The state also presented the testimony of detective Piel of the Latah County Sheriff's Office, who testified that he was present when the deputy prosecutor and detective Jordan stitched the shirt back together to restore the shirt to its original condition and to analyze the holes in the shirt a little more closely. The expert who examined the shirt before and after it was sewn had noted in his initial report only two holes in the sleeve. At trial, he testified that when he later examined the shirt a second time after the shirt was stitched together, a third hole was revealed which was not visible until the pieces of the shirt were reunited. It is the origin of the third hole in the sleeve that was in question at the trial. One of the experts also testified that, had he received the shirt in pieces, he would have stapled it back together to examine it in its original form.

The district court overruled Hagedorn's objection to the admission of the shirt on Hagedorn's claim that there was a break in the chain of custody and that the shirt had been materially altered. The district court reasoned that the authenticity of the shirt and its relevance had been clearly established. The district court was satisfied that the alterations to the shirt had been explained by the testimony of the witnesses and that the changes were not for an unjustifiable purpose or designed to mislead.

█ It has been held that an objection to the admissibility of an exhibit, based on questionable identity and authenticity, goes to the weight to be accorded the evidence, not its admissibility. *Wilson,* 120 Idaho at 646, 818 P.2d at 350. Furthermore, where the court is satisfied that in all reasonable probability the article has not been changed in any important respect, the article is admissible in evidence. *Griffith,* 94 Idaho at 82, 481 P.2d at 40. We conclude that the district court properly applied the law to the facts in the exercise of its discretion in deciding whether to admit the shirt into evidence. Therefore, we hold that the admission of the shirt into evidence by the district court was not an abuse of discretion and was not error.

### D. Excessive Sentence

Finally, Hagedorn contends that his sentence is unreasonable under the facts of this case. He argues that the sentence of thirty years to life reflects that the district court did not properly weigh the mitigating factors set forth in I.C. § 19–2521 and failed to give due consideration to Hagedorn's remorse and potential for rehabilitation.

We are well aware of the applicable standard of review and the factors to be considered in evaluating the reasonableness of a sentence. *See State v. Hernandez,* 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App. 1991); *State v. Lopez,* 106 Idaho 447, 449–51, 680 P.2d 869, 871–73 (Ct.App.1984); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982).

█ Although the pre-sentence investigation report is not part of the record on appeal, we have reviewed the district court's colloquy. The district court considered as mitigating factors Hagedorn's good employment history and that he had no prior felonies. Hagedorn's record, however, was replete with infractions and misdemeanors which represented a certain disdain for the law. Because Hagedorn had taken to carrying a pistol on his person, the district court saw in Hagedorn an individual with a propensity for violence which was only aggravated by Hagedorn's regular alcohol abuse. The district court also viewed with disfavor Hagedorn's efforts to diminish his culpability in

**162**

the shooting by concocting a story that the victim had committed suicide.

After fully reviewing the record, we conclude that the district court imposed a sentence which took into account the senseless nature of Romero's death and the objectives of sentencing. The life sentence, with a fixed term of confinement of thirty years, does not constitute an abuse of the district court's discretion.

### IV.

### CONCLUSION

The evidence seized without a warrant was admissible under the plain view doctrine. Therefore, we conclude that the suppression motion was properly denied. Further, the search warrant was not tainted by illegally obtained information and not subject to being quashed because of any defects in its return. Therefore, the evidence seized pursuant to the warrant was properly admitted. The victim's shirt, exhibit 8, was also properly admitted. The life sentence, with a fixed term of confinement of thirty years, does not constitute an abuse of discretion.

Hagedorn's judgment of conviction and sentence are affirmed.

WALTERS, C.J., and LANSING, J., concur.