**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38580**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Unpublished Opinion No. 730 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 2, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DAVID ALLEN LONG, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Order denying motion to suppress evidence, affirmed.

Michael S. Jacques, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

LANSING, Judge

David Long appeals from the judgment entered upon his conditional guilty plea to manufacturing marijuana. Long contends the district court erred in denying his motion to suppress evidence obtained pursuant to a search warrant.

**I.**

**BACKGROUND**

On July 6, 2010, the State requested issuance of a warrant to search David Long's residence. The magistrate conducted a hearing at which a detective with the Idaho State Police testified in support of the issuance of the warrant. The detective first described how a typical indoor marijuana growing operation works and described some of the common features of a

1

clandestine growing operation.[1]  The most significant portions of the testimony are summarized as follows.

At some point prior to July 1, 2010, a detective with the Idaho State Police received a tip regarding activity at a house that was later determined to be David Long's residence.  The tip indicated that the exterior lights of the house remained on during a neighborhood-wide power outage, fans had been mounted into the back door, bright lights shone out of the house at night, something was covering the windows in an apparent attempt to prevent the light from shining through, and the resident living in the house was seen only when mowing the lawn.  The detective visited the house and confirmed that a "30-inch piece of plywood that went from the base of the door to the top" had been installed in the back door, with "what appeared to be [two] exhaust fans custom built into the plywood."  The front "blinds were pulled, and behind the blinds was some sort of non-transparent material . . . [that] looked like aluminum foil cover[ing] the whole inside of the window."  A noise that sounded like a fan or a generator could be heard coming from inside the residence.  The detective also noted freshly-mowed grass, but no garden.  The detective attempted to make contact, but received no answer.  After determining that the house was rented to Long, the detective conducted a criminal history check and discovered that Long had "three convictions for marijuana type crimes."

The detective decided to conduct surveillance on Long's residence.  During the surveillance, Long was followed to a home-improvement store where "he went to the garden section[,] [a]ppeared to be looking in the fertilizer area[,] [t]alked to some people in the outdoor garden section and then left the store without purchasing anything."  He was then followed to another home-improvement store where he again went to the garden section, was in the fertilizer area, spoke to several of the people in the garden section, and left the store without purchasing anything.  Long was followed to a third home-improvement store where he looked at fertilizer and liquid grow mixtures and looked at starter plant boxes, which were little crates that would hold seventy-two starter plants.  After looking at these items, Long spoke to people in the garden section and left without purchasing anything.  While Long was visiting the home-improvement

---

[1]  He explained that intricate lighting and watering systems, purchases of or interest in large quantities of garden supply materials, window films or screening materials that can block light and create privacy, exhaust fans that can dissipate heat, odors, and moisture, and alternate sources of energy such as generators, were all indicative of marijuana production.

stores, an officer observed what he believed could be a disguised forty to seventy-gallon fuel tank that was flat and covered the whole bed of Long's truck. The detective testified that the tank could be used to transport fuel for a generator.

During the hearing, the detective was questioned by the Canyon County Prosecutor as follows:

Q: "[F]rom what you're telling me, is it your belief that he is setting up a grow operation . . . ?
A. It's -- it's my opinion that there is a current grow in there and he's either grafting off larger plants or making clones of the plants he does have or he's in the initial phases of it.
Q. Can you tell the judge why you believe that?
A. The reason I know it's currently in a phase -- a growing phase is on Sunday night, the 4th of July, about midnight, 11:45, I drove by the residence. I could see a very bright light emanating from the front room. I could see the silhouette of something covering the window and I could see the real bright white growing type lights shining out of that window. I could see the multi-colors, the purples, the blues that are prevalent in those lights. I could see it coming out of the window.
Q. So in your earlier testimony, you talked about a sodium halide light and the various types of colors of light that those lights produce.[2] Is that what you thought you were seeing?
A. Yes. It appeared to be a sodium halide light shining out of that window.
Q. And those are utilized for indoor growing operations?
A. Yes.

Based on this evidence, the magistrate issued a warrant to search Long's residence. Upon a search of the residence, officers discovered approximately twenty-one marijuana plants located in a homemade closet, with an elaborate system of lights, vents, and growing equipment. Long filed a motion to suppress the evidence discovered as a result of the search. He contended there was no showing of probable cause for issuance of the search warrant. The district court denied the motion. On appeal, Long asserts that evidence presented to the magistrate did not constitute a substantial basis upon which the magistrate could properly find probable cause.

---

[2] The detective had previously testified that marijuana production is typically accomplished through the use of "multi-color" "sodium halide lamp" that produces "a really bright white light."

## II.

## ANALYSIS

In order for a search warrant to comply with the Fourth Amendment to the United States Constitution, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in the place to be searched. *State v. Josephson*, 123 Idaho 790, 792-93, 852 P.2d 1387, 1389-90 (1993); *State v. Belden*, 148 Idaho 277, 280, 220 P.3d 1096, 1099 (Ct. App. 2009). The affidavit or testimony supporting the issuance of a warrant must be based on substantial evidence, and must provide the magistrate with a substantial basis to believe that probable cause exists. I.C.R. 41(c). *See, e.g.*, *State v. Chandler*, 140 Idaho 760, 762, 101 P.3d 704, 706 (Ct. App. 2004).

There is no bright-line test or prescribed set of rules to determine whether probable cause exists. Instead, as described by the United States Supreme Court:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). *See also State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997). The evidence need only be sufficient to show that it would be reasonable to seek the evidence in the place indicated in the warrant, not that the evidence sought is there in fact, or is more likely than not to be found there. *State v. O'Keefe*, 143 Idaho 278, 287, 141 P.3d 1147, 1156 (Ct. App. 2006); *State v. Fairchild*, 121 Idaho 960, 966, 829 P.2d 550, 556 (Ct. App. 1992).

When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 239; *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983); *Belden*, 148 Idaho at 280, 220 P.3d at 1099. In this evaluation, great deference is paid to the magistrate's determination. *Gates*, 462 U.S. at 236; *Belden*, 148 Idaho at 280, 220 P.3d at 1099; *Wilson*, 130 Idaho at 215, 938 P.2d at 1253. The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed. *State v. Fisher*, 140 Idaho 365, 369, 93 P.3d 696, 700 (2004); *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985). Our review of the magistrate's decision

4

to issue the warrant is conducted with due regard for, but independently from, the district court's decision. *Chandler*, 140 Idaho at 762, 101 P.3d at 706. When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).

Long asserts that the testimony presented to the magistrate constituted little more than bare conclusions offered by an officer engaged in the often competitive enterprise of ferreting out crime. Magistrates may not issue warrants on "bare bones" affidavits that do not detail any of the underlying circumstances. *Gates*, 462 U.S. at 239; *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965); *State v. Weimer*, 133 Idaho 442, 446-47, 988 P.2d 216, 220-21 (Ct. App. 1999). For example, in *Gates*, the Supreme Court explained that neither the "sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises," nor an "officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home," provide sufficient basis for probable cause. *Gates*, 462 U.S. at 239 (quoting *Nathanson v. United States*, 290 U.S. 41, 44 (1933) and *Aguilar v. Texas*, 378 U.S. 108, 109 (1964)). The reviewing court ensures that the magistrate "perform[s] his detached function and [does] not serve merely as a rubber stamp for the police" by conscientiously reviewing the sufficiency of the affidavit on which a warrant is issued. *Ventresca*, 380 U.S. at 109; *accord State v. Sholes*, 120 Idaho 639, 641, 818 P.2d 343, 345 (Ct. App. 1991). *See also Gates*, 462 U.S. at 239.

Here, the testimony presented to the magistrate included more than bare conclusions. Although the detective did express his opinion that a grow operation would be found in Long's residence, he supported his opinion with the facts he relied upon to reach this conclusion. Specifically, the officer described fans mounted in the back door, a foil window covering, bright lights which appeared to him to be of the type commonly used to grow marijuana indoors, Long's demonstrated interest in fertilizer and plant starter boxes despite having no apparent garden, various facts suggesting the use of a generator, and Long's criminal history which included three "marijuana type" offenses. While this evidence is by no means overwhelming, it provided a substantial basis upon which the magistrate could reasonably determine that probable cause existed. The magistrate's decision was based on more than bare assertions and conclusory statements.

Next, Long appears to argue that because many, if not all, of the facts presented to the magistrate could have innocent explanations, the evidence could not provide a reasonable basis for a finding of probable cause. For example, he asserts that the window coverings could have been used to allow daytime sleep, prevent glare on a television, or provide privacy; that the fans could have been used to cool the house; and that his interest in fertilizers was consistent with a well-kept lawn. Evidence presented to a magistrate during a probable cause hearing may often lead to multiple or conflicting inferences, some of which are innocent, and others of which are not. Magistrates do not best accomplish their task either by requiring that all innocent explanations be excluded before finding probable cause, or by concluding that an activity is suspicious merely because it is labeled so. *See Gates*, 462 U.S. at 241. "'Fidelity' to the commands of the Constitution suggests balanced judgment rather than exhortation." *Id.* As we have said in considering whether reasonable suspicion was shown for extending a traffic stop, "a series of acts that appear innocent, when viewed separately, may warrant further investigation when viewed together." *State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001) (quoting *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir. 1992)); *accord United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct"); *United States v. Sokolow*, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent [activity]. But we think taken together they amount to reasonable suspicion."); *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (officer observed suspects commit "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation").

This reasoning is applicable to determinations of probable cause. *See Massachusetts v. Upton*, 466 U.S. 727, 731 (1984) (reversing after the Supreme Judicial Court of Massachusetts reasoned that corroboration of innocent, nonsuspicious or public information of an informant's tip could not establish probable cause). As explained in *Gates*, "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Gates*, 462 U.S. at 244, n.13. "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231;

*accord Brinegar v. United States*, 338 U.S. 160, 175 (1949).  If the facts presented to the magistrate could lead to inferences weighing for or against a finding of probable cause, we will generally defer to the magistrate's findings.  *See Ventresca*, 380 U.S. at 109 ("[T]he resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants.").  Here, the detective's observations of various indicia of a possible grow operation being conducted at Long's home, Long's actions while under surveillance, and Long's criminal history, taken together, provided the basis for a finding of probable cause, even if each fact alone would have supported innocent inferences.  Thus, the magistrate did not abuse his discretion.

Finally, Long challenges the accuracy of many of the facts presented to the magistrate. Long acknowledges that a post-search hindsight review of the facts is an inappropriate standard to review the sufficiency of a probable cause determination.  *See Upton*, 466 U.S. at 733 (1984). He nevertheless contends that after the search, it was clear that the marijuana plants were located entirely inside a closet, the lights viewed by the officer were houselights unrelated to the grow operation, the window covering was not employed to conceal the grow operation, there was no generator located in the home, there was no fuel tank in the bed of Long's truck, and the fans mounted in the back door of Long's residence were used to dissipate exhaust generated from a legal indoor beer-brewing operation.[3]  Long appears to be arguing, in part, that false or misleading testimony was presented to the magistrate.[4]  If Long believed that the detective misled the magistrate intentionally or with reckless disregard of the truth, he could have requested an evidentiary hearing to demonstrate such misconduct.  *See Franks v. Delaware*, 438 U.S. 154 (1978); *State v. Kay*, 129 Idaho 507, 511, 927 P.2d 897, 901 (Ct. App. 1996).  Because Long did not request a *Franks* hearing, he did not preserve this issue nor allow the State an

---

[3]     Many of the facts Long relies upon to support his hindsight review are not contained within the record presented on appeal.  Long presented similar unsupported arguments before the district court, prompting the district court to remind the parties that the court is limited to the facts in the record.  We are also so constrained.

[4]     Long explicitly asserts that the evidence of a generator "consisted entirely of speculation and amounts to nothing more than 'the Government attempt[ing] to spin these largely mundane acts into a web of deception.'"  Similarly, Long implies that the detective misled the court by testifying that grow lights produce a multi-colored spectrum of light, and then inconsistently testifying that he believed the light coming from Long's house was a grow light because it was "bright white."

7

opportunity to present responsive evidence.  Therefore, we will not address this issue on appeal. *See Chandler*, 140 Idaho at 763 n.2, 101 P.3d at 707 n.2.

**III.**

**CONCLUSION**

The testimony provided to the magistrate provided a substantial basis to support a finding of probable cause.  The magistrate's decision was not an abuse of discretion.  Therefore, we affirm the denial of Long's suppression motion.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**