**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41167**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 783 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 23, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MICHAEL TRELBY CUNNINGHAM, JR., | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Jeff M. Brudie, District Judge. Hon. Barbara Buchanan, Magistrate.

Order of the district court, on intermediate appeal from the magistrate, affirming judgment of conviction for possession of marijuana and possession of paraphernalia, <u>affirmed</u>.

Thornton Law Office, Sandpoint, for appellant. Valerie P. Thornton argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

---

MELANSON, Judge

Michael Trelby Cunningham, Jr. appeals from the district court's order, entered in its intermediate appellate capacity, affirming Cunningham's judgment of conviction for possession of marijuana and possession of paraphernalia. Specifically, he contends the district court erred in affirming the magistrate's order denying his motion to suppress evidence obtained pursuant to a search warrant. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Officers applied for a warrant to search Cunningham's apartment. The following evidence was presented to the magistrate, through the testimony of two officers, in support of the application. Cunningham lived in an apartment connected to the rear of a house. Cunningham's neighbor, who lived in the house, contacted police after smelling a strong odor of marijuana

1

coming from Cunningham's apartment and reported that there was frequent, short-term traffic at Cunningham's apartment. As a result, the police began monitoring Cunningham's apartment, but no unusual activity was observed. The neighbor contacted police a number of times over a three-month period about the smell of marijuana coming from Cunningham's apartment. The neighbor expressed concerns that her son, who was asthmatic, was affected by any type of smoke in the home. In addition to contacting the police, the neighbor's mother expressed the concerns directly to Cunningham, after which the smell of marijuana was not detected for approximately one month. However, the smell of marijuana returned and another call from the neighbor to the police followed.

In response to the final call, an officer went to the neighbor's residence, where she indicated she could smell marijuana coming from Cunningham's apartment. The neighbor described to the officer the history of her discussions with the police regarding Cunningham's apartment and the marijuana concerns and also explained that it had been an ongoing issue since the neighbor moved in approximately four months prior. The officer was allowed in all open rooms of the house to try to detect the odor. In the son's bedroom was a door connecting the house to Cunningham's apartment. The neighbor reported that the door was covered with a blanket in order to prevent the odor from entering her son's room and the officer did not detect the odor of marijuana in the bedroom. The neighbor also reported the heat ducts in her house were shared with Cunningham's apartment and she believed the smell came into her home through the vents from the heat ducts. The officer could smell the distinct odor of marijuana in an area below a vent, which was located in the ceiling near the front entrance of the neighbor's residence, away from the wall shared by the neighbor and Cunningham.

Finally, the officers testified that Cunningham had two prior marijuana-related incidents. However, the officer who testified explained that it was not clear from the database he searched whether Cunningham was charged in either instance. The neighbor also reported there was frequent, short-term traffic at Cunningham's apartment and that she had recorded several license plate numbers. The officer who received the license plate numbers did not recall any details about the owners of the vehicles. The neighbor further expressed concerns that, since the residence appeared to be a single-family house from the outside, people might have thought she was selling marijuana.

The officer applied for a warrant to search Cunningham's apartment. Based upon the testimony of the two officers, who provided all of the above evidence, the warrant was granted. The search warrant was executed and officers found a small amount of marijuana, a number of items of paraphernalia, a locked box containing $9,050 in cash, and several pieces of mail addressed to Cunningham.

The state charged Cunningham with possession of a controlled substance, I.C. § 37-2732(C)(3), and possession of drug paraphernalia, I.C. § 37-2734(A). Cunningham moved to suppress evidence of the items seized, contending that there was insufficient evidence to support a finding of probable cause to issue the search warrant for his apartment. The magistrate denied the motion and Cunningham pled guilty to possession of marijuana and possession of paraphernalia. Cunningham then appealed the denial of his motion to suppress to the district court, which affirmed. Cunningham again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions following therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, the appellate courts do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or dismiss the decisions of the district court. *Id*.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

3

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates*, 462 U.S. at 236; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997). The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed. *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17 of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit." In order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place. *Josephson*, 123 Idaho at 792-93, 852 P.2d at 1389-90. When determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238; *see also Wilson*, 130 Idaho at 215, 938 P.2d at 1253.

4

## III.

## ANALYSIS

Cunningham argues the magistrate erred when it determined that probable cause supported the issuance of a warrant to search his apartment. Specifically, Cunningham alleges the reliability and veracity of the informant was insufficient, the information contained in the affidavit in support of the application for the search warrant was unsubstantiated hearsay, and there was no nexus demonstrated between Cunningham's apartment and the suspected criminal activity.

Initially, we address Cunningham's contention that the warrant to search his apartment was not supported by probable cause because the reliability and veracity of the informant was insufficient. This Court has stated that, where the information comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability. *State v. Larson*, 135 Idaho 99, 101, 15 P.3d 334, 336 (Ct. App. 2000). A known citizen is one who provides facts from which his or her identity can be readily ascertained. *See id.* at 102, 15 P.3d at 337. In this case, the neighbor not only provided her name, but had previously provided information to law enforcement regarding Cunningham's apartment. Additionally, the officer had personal contact with the neighbor at her residence and her identity was provided at the time of the affidavit in support of the search warrant. These facts support the conclusion that the neighbor was a citizen informant whose veracity should be presumed. Under these circumstances, there was a substantial basis for crediting the information provided by the neighbor.

Next, we address Cunningham's contention that the search warrant was not supported by probable cause because the information contained in the affidavit supporting the application for the warrant was based upon unsubstantiated hearsay. The evidence offered in support of a warrant may include hearsay, provided there is a substantial basis for crediting the hearsay. *State v. Wengren*, 126 Idaho 662, 666, 889 P.2d 96, 100 (Ct. App. 1995). Where the warrant application is based in part upon information provided by an informant, factors supporting probable cause may include facts in the affidavit indicating the reliability of the informant and the basis of the informant's knowledge. *State v. Chapple*, 124 Idaho 525, 527, 861 P.2d 95, 97 (Ct. App. 1993). The reliability of the information supplied by an informant is highly relevant in

determining the value of the hearsay information supplied by that informant and, thus, in making a determination of probable cause. *State v. Molina*, 125 Idaho 637, 640, 873 P.2d 891, 894 (Ct. App. 1993). Information may be sufficiently reliable to support a probable cause finding if the information is corroborated by independent evidence. *Draper v. United States*, 358 U.S. 307, 313 (1959); *State v. Carlson*, 134 Idaho 471, 476, 4 P.3d 1122, 1127 (Ct. App. 2000).

In this case, the reliability of the information was supported by corroborating evidence from an officer who also smelled the distinct odor of marijuana in an area of the neighbor's residence where a heating vent was located. The finding of probable cause was not based upon unsubstantiated hearsay statements, as Cunningham alleges. Thus, the magistrate did not err in considering the corroborated hearsay statements in making its determination of probable cause.

Finally, Cunningham asserts that the evidence presented was insufficient to demonstrate that probable cause existed to search his apartment because there was no nexus between the suspected criminal activity and Cunningham's apartment. In order to provide an adequate basis for a determination of probable cause to issue a search warrant, the affidavits must establish a sufficient nexus between criminal activity and the item to be seized and a nexus between the item to be seized and the place to be searched. U.S. CONST. amend. IV; *State v. Yager*, 139 Idaho 680, 686, 85 P.3d 656, 662 (2004). Although probable cause to believe that a person has committed a crime does not necessarily give rise to probable cause to search that person's home, the trial court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. *Molina*, 125 Idaho at 642, 873 P.2d at 896.

In this case, no one directly observed marijuana or paraphernalia in Cunningham's apartment prior to the officers' search. However, there was evidence that a crime was committed in Cunningham's apartment--specifically, that marijuana was present in his apartment. Both the neighbor and the officer smelled the odor of marijuana in an area of the neighbor's residence near a heating vent that the neighbor said was connected to Cunningham's apartment. The neighbor said that no marijuana odor had been detected before Cunningham moved into the apartment. In addition, the neighbor reported frequent short-term traffic at the apartment. This evidence provides a sufficient nexus between the criminal activity--possession of marijuana; the items to be seized--marijuana and paraphernalia; and the place to be searched--Cunningham's apartment.

6

# IV.

# CONCLUSION

There was substantial and competent evidence to support a finding of probable cause that contraband or evidence of a crime would be found in Cunningham's apartment. We hold that the district court did not err in affirming the magistrate's denial of the motion to suppress. Accordingly, the district court's order on intermediate appeal affirming Cunningham's judgment of conviction for possession of marijuana and possession of paraphernalia is affirmed.

Judge LANSING, **CONCURS.**

Chief Judge GUTIERREZ, **DISSENTING.**

When considering a challenge to probable cause supporting a search warrant, an appellate court must ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). Because I conclude that the magistrate did not have a substantial basis for determining that probable cause existed, I respectfully dissent.

In this appeal, the layout of the property that was searched is important to understand why probable cause did not exist. At the probable cause hearing, two detectives testified and provided details about the property in Sandpoint. The property consisted of a single-family dwelling, occupied by the informant, with an "addition" that served as an apartment, occupied by Cunningham. The addition was set back from the street; to access the addition from the street, Detective Beers informed the magistrate that a person would have to go through a gate in a low fence and proceed to a sliding glass door in the addition. This was not the only door to the addition, though, as the dwelling and addition shared a common wall. The common wall was part of the informant's son's bedroom, and there was a door between the son's bedroom and the addition.

Besides describing the property, the two detectives also explained their interaction with the informant. On the day of the probable cause hearing, Detective Beers received a call from the informant, who stated that she smelled a strong odor of marijuana "coming from the vent." During the call, she also explained that the dwelling and addition "share some sort of vent." Detective Beers was out of the county; thus, he called Detective Sanger and asked Detective Sanger to go to the dwelling.

Detective Sanger responded to the dwelling where he met the informant. The informant filled in the detective about the ongoing issue with the marijuana smell and her previous contacts with Detective Beers and a corporal. The informant also showed Detective Sanger around her dwelling and led him into all of the rooms of the dwelling. The informant "indicated that the vents, which are the heating ducts that come in through the ceiling, are shared with the [addition], and that is where she could smell the marijuana." Detective Sanger did not state that he could smell marijuana in any of the rooms he visited; rather, Detective Sanger "smell[ed] the distinct odor of marijuana around the front door entrance where there was a vent immediately above [him]." Detective Sanger then went to the son's bedroom, the room that adjoins the addition, but he could not smell any marijuana in that room. In the son's room, Detective Sanger noted that there was a blanket over the door that led to the addition, and the informant told Detective Sanger that she placed the blanket there to keep the odor out. During his visit to the dwelling, Detective Sanger and the informant discussed her concerns, and during the visit, the informant also told the detective that she was familiar with the smell of marijuana because she had previously used it.

Detective Beers also recounted his prior interactions with the informant. Three months before, Detective Beers was apprised that the informant could smell a strong odor of marijuana. Apparently, the informant had also noted short-term traffic at the addition. With this knowledge, Detective Beers surveilled the residence "a number of times" to determine whether there was any traffic going to and from the addition, but he did not see anything. The informant also provided a few licenses plate numbers from cars that she alleged visited the addition, but Detective Beers did not recall any of the owners of the licensed cars and he did not indicate that he did any further investigation of this information.

A month before the probable cause hearing, the informant contacted Detective Beers again. The informant's son reported to the informant that he smelled marijuana in the dwelling earlier in the day, but the informant did not smell any marijuana upon her return to the dwelling. Detective Beers did not indicate that he made any further investigation of this incident, but he noted that during the three-month period, he had talked to and emailed the informant several times. Detective Beers also knew that the informant's mother had talked to Cunningham at least twice regarding the odor. With all of this information, the magistrate found probable cause and issued the search warrant.

8

The magistrate's task, in a probable cause hearing, is to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238; *see also State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997). Based on the oral statements made at the probable cause hearing, I conclude that the magistrate lacked a substantial basis for probable cause when she determined that there was a fair probability that contraband or evidence of a crime would be found in the addition.

The only odor that was detected by Detective Sanger was at the front door entrance to the dwelling, not the sliding glass door that accesses the addition. What is more, Detective Sanger did not state that he smelled marijuana in any other room in the dwelling. Importantly, Detective Sanger explicitly stated that he did *not* smell marijuana in the son's room, which had a blanket-covered door that adjoined the addition. In short, Detective Sanger stated that he smelled marijuana, but his statements did not suggest the geographic source of the odor, did not identify who smoked the marijuana, and did not establish a fair probability that evidence or contraband would be found in the addition.

The unstated inference drawn by the majority and, presumably, the magistrate is that the odor Detective Sanger smelled originated from the vent near the front door entrance of the dwelling; the inference also relies on the assumption that the vent is connected to heating or cooling ductwork that is shared with ductwork in the addition, again presuming there is ductwork in the addition. However, this inference is not supported by Detective Sanger's statements in which he stated that he could smell the odor *near the front door entrance* of the dwelling. Although Detective Sanger noted that there was a vent present near this entrance, Detective Sanger did not state that the odor was emanating from the vent. The inference is also belied by the statements of Detective Sanger, explaining that he could not smell marijuana in the son's bedroom--the room closest to the addition and the room that shared a door with the addition. The informant's comments to Detective Sanger described shared ductwork between the dwelling and the addition, with vents in the rooms, but Detective Sanger did not verify whether the ductwork was shared between the dwelling and addition and whether the vent near the front entrance was connected to the shared ductwork. Even if the dwelling and addition shared ductwork, and the vents connected to the shared ductwork, it stands to reason that Detective Sanger would have detected the presence of marijuana odor from another vent inside the dwelling, especially a vent closer to the addition, or near the door in the son's bedroom.

9

However, Detective Sanger did not state that he smelled the odor of marijuana in any room, but only near the front door entrance.

The informant's statements from the day at issue similarly fail to elucidate that the odor was originating from the addition. The informant had explained to Detective Sanger that she smelled the odor of marijuana from a vent on the date at issue, although Detective Sanger did not identify to which vent the informant was referring. The only form of corroboration was Detective Sanger's statement that he smelled the odor near the front door entrance, where he also noted there was vent, but he did not state that the odor emanated from the vent.

In considering the totality of the statements, I also note that I do not "presume" the veracity of the informant's statements that were relayed by Detective Beers and Detective Sanger to the magistrate. In fact, the statements at the hearing cut against the informant's veracity. Detective Beers was apprised of the informant's claim that there was short-term traffic frequenting the addition. However, Detective Beers stated that he surveilled the addition "a numbers of times" to determine if there was short-term traffic frequenting the addition, but he "didn't see any."

In summary, there was not a substantial basis for the magistrate to find that there was a fair probability that contraband or evidence of a crime would be found in the addition. Therefore, I would hold that the magistrate abused her discretion when she determined there was probable cause and issued the search warrant, and would conclude that the district court erred by affirming the dismissal of the motion to suppress. Accordingly, I respectfully dissent.